OPINION *Page 2 
{¶ 1} On December 25, 1991, appellant, Noel Houk, and appellee, Barbara Spring-Houk, were married. On July 19, 2005, appellant filed a complaint for divorce. Hearings were held on April 20, and June 30, 2006. The trial court issued a judgment entry decree of divorce on March 14, 2007, distributing the parties' property.
 {¶ 2} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 3} "THE TRIAL COURT ERRED WHEN IT AWARDED APPELLEE A SEPARATE PROPERTY INTEREST IN THE REAL ESTATE PROCEEDS."
 II {¶ 4} "THE TRIAL COURT ERRED IN DIVIDING THE APPELLANT'S RETIREMENT ACCOUNT."
 III {¶ 5} "THE TRIAL COURT ERRED IN NOT AWARDING THE EDWARD JONES ACCOUNT TO THE APPELLANT AS HIS SEPARATE PROPERTY."
 IV {¶ 6} "THE TRIAL COURT ERRED IN ITS DISTRIBUTION AWARD TO THE RESPECTIVE PARTIES."
 V {¶ 7} "THE TRIAL COURT ERRED IN USING THE FULL VALUE OF THE BUICK CENTURY." *Page 3 
 VI {¶ 8} "THE TRIAL COURT ERRED IN AWARDING APPELLEE ATTORNEY'S FEES."
 I {¶ 9} Appellant claims the trial court erred in finding appellee had a separate property interest in the real estate proceeds from the Mt. Vernon Road property. We disagree.
 {¶ 10} In dividing property, the trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb. v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 11} Separate property is defined in R.C. 3105.171(A)(6)(a) as follows in pertinent part:
 {¶ 12} "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 13} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." *Page 4 
 {¶ 14} R.C. 3105.171(A)(6)(b) states, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."
 {¶ 15} In its judgment entry decree of divorce filed March 14, 2007, the trial court found appellee "made a separate marital contribution of $20,720.00 toward the instant real estate purchase."
 {¶ 16} Appellee sold the Mt. Vernon Road property to appellant prior to the marriage. T. at 96, 98, 217-218. Also prior to the marriage, the parties purchased a property on Dietrich Court. T. at 96-97, 218. In order to purchase this property, the parties obtained a bridge loan, using both the Mt. Vernon Road property and the Dietrich Court property as collateral. T. at 97, 220. Thereafter, appellant obtained a VA loan for the Mt. Vernon Road property. T. at 97-98. Ultimately, appellant signed over the Mt. Vernon Road property to his daughter in exchange for her assuming the VA loan. T. at 96-98.
 {¶ 17} Appellant argues the proceeds from the Mt. Vernon Road property helped finance the Dietrich Court property and paid off appellee's credit card debt. T. at 99-101. It is appellant's position the $20,720.00 appellee claimed as her separate property was not traceable, and had merged into marital property through the financing of other real estate purchases.
 {¶ 18} Appellee argues the $20,720.00 is set out in the December 23, 1991 settlement statement from the sale of the Mt. Vernon Road property; it is reflected therein that said amount was applied to purchase the Dietrich Court property. T. at 220- *Page 5 
222; Defendant's Exhibit I. She further argues subsequent property purchases were done with a down payment which exceeded the $20,720.00 amount. T. at 222.
 {¶ 19} Both parties concede prior to the marriage, appellee sold the Mt. Vernon Road property to appellant, and it was used as collateral for a bridge loan and the subsequent ten percent down payment on the Dietrich Court property. T. at 36, 97-98, 99-101, 220-222. The mortgage on the Dietrich Court property was in the name of both parties. See, Defendant's Exhibits G and H.
 {¶ 20} Appellant testified the remainder of the amount left from the sale of the Mt. Vernon property after applying the ten percent down payment on the Dietrich Court property was used to pay off appellee's credit card bills. T. at 100-101. Appellee argues her $20,720.00 was used for subsequent real estate purchases.
 {¶ 21} It is important to note all of the transactions concerning the Mt. Vernon Road and Dietrich Court properties occurred prior to the parties' marriage, and the Mt. Vernon Road property was sold by appellant to his daughter. Appellee was named on the mortgage of the Dietrich Court property. See, Defendant's Exhibits G and H. Defendant's Exhibit G indicates $18,400.00 was due from the sale of the Mt. Vernon Road property. The settlement statement, Defendant's Exhibit I, indicates $20,720.00 was applied to the Dietrich Court property purchase.
 {¶ 22} The trial court accepted these exhibits and appellee's testimony that it was her equity interest in the Mt. Vernon Road property that financed the Dietrich Court property and subsequent real estate purchases. We find the record is sufficient to support the trial court's conclusion.
 {¶ 23} Assignment of Error I is denied. *Page 6 
 II, III, IV {¶ 24} Appellant claims the trial court erred in dividing his retirement accounts and in fashioning the distribution awarded. We agree.
 {¶ 25} In its judgment entry decree of divorce filed March 14, 2007, the trial court found appellant "has a retirement account of $18,000.00. In addition, the Plaintiff has an Edward Jones account worth $88,240.00. The Court finds that this Edward Jones account, because of a premarital contribution of $20,677.00, has a current marital value of $67,563.00." The trial court went on to find appellee had a retirement account worth $10,898.00, and awarded each party "one half the value of the other's accounts."
 {¶ 26} Appellant argues the trial court erred in determining he had two separate retirement accounts. Appellant also argues the amount attributable to the Edward Jones account was in error, and the Marathon Oil Company Thrift Plan account was rolled over into the Edward Jones account. T. at 120. Appellant did not provide the trial court with any evidence of the rollover of the Marathon Oil Company Thrift Plan account into the Edward Jones account. The only evidence regarding the Marathon account is a statement dated October 1, 2000 — December 31, 2000, and the value was listed as $20,396.05. Defendant's Exhibit U.
 {¶ 27} Appellee argues the withdrawals from the Edward Jones account were purposeful moves by appellant to deprive her of his retirement benefit. In support, appellee testified in 2002, appellant told her she would never see a penny from this account. T. at 235.
 {¶ 28} The statements for the Edward Jones account indicate an increase from $30,313.09 in the September 30 — October 27, 2000 statement to $92,268.30 in the *Page 7 
March 31 — April 27, 2001 statement, an increase in value of almost $62,000.00. There are incomplete or no statements from October 28, 2000 to March 30, 2001 to indicate the reason for the substantial increase, although appellant testified he took a cash settlement in the amount of $45,000.00 from Marathon when he retired in December of 2000, and said amount "rolled over into Edward Jones." T. at 106, 166. A January 1-January 25, 2002 statement lists an account balance of $88,240.55. See, Defendant's Exhibit O. The statement of November 30 — December 31, 2002 indicates a rollover contribution of $39,689.63. This same amount was transferred out on December 10, 2002. The parties agree this amount was used to purchase the current marital residence until a prior residence could be sold, but there was an $8,000.00 loss associated with borrowing the money from the retirement account. T. at 107-111, 146, 279-280. The last complete statement dated January 1 — January 28, 2005 indicates an account value of $47,238.78. An April 7, 2006 account balance sheet indicates at the time of the hearing, the account was worth $18,831.00. Appellant stated he borrowed money from the Edward Jones account to remodel houses and purchase vehicles. T. at 107-110, 115, 146-147, 321. Plaintiff's Exhibit 25 indicates a March 30, 2005 wire transfer to appellant in the amount of $28,015.00. Appellant testified he withdrew this amount to buy a van. T. at 147. Appellant testified several times he withdrew $10,000.00 a year to pay bills. T. at 335-336.
 {¶ 29} Although the exhibits might lead to a conclusion that there was some sort of contribution from October 28, 2000 to March 30, 2001, there is no indication of any contribution nor a close-out statement on the Marathon Oil Company Thrift Plan account. In comparing the September 30 — October 27, 2000 statement to the March 31 *Page 8 
— April 27, 2001 statement, $29,934.70 worth of bonds and $17,773.50 worth of stocks were added to the portfolio along with an increase of approximately $14,000.00 in cash and mutual funds. We can only surmise a great influx was placed into the account from October 28, 2000 to March 30, 2001. We also know from Defendant's Exhibit U that $20,396.05 existed in the Marathon Oil Company Thrift Plan account as of December 31, 2000. Appellant testified all of the Ashland/Marathon pension accounts, except for half of his ESOP plan, rolled into one retirement plan, and he receives a monthly annuity from this fund. T. at 154-158. Half of the ESOP plan, worth approximately $20,000.00, was "rolled over into Edward Jones." T. at 158.
 {¶ 30} In finding the Edward Jones account had a current marital value of $67,563.00, the trial court disregarded the April 7, 2006 account balance sheet which indicated at the time of the hearing, the account was worth $18,831.00. Without finding financial misconduct, the trial court accepted the account balance of $88,240.55 from Defendant's Exhibit O.
 {¶ 31} This amount is clearly incorrect as indicated by a review of the statements of the Edward Jones account. We find the trial court's computation is in error and conclude the Edward Jones account to be worth $18,831.00 and the retirement account to be worth $18,000.00. We therefore remand the issue of distribution of assets consistent with our findings.
 {¶ 32} Assignments of Error II, III, and IV are granted.
 V {¶ 33} Appellant claims the trial court erred in determining the value of the Buick Century. We disagree. *Page 9 
 {¶ 34} The evidence as to the value of the Buick came from appellee ($7,200.00). T. at 224; Exhibit K. Appellant drove the Buick to Florida and then gave it to his daughter in April of 2005. T. at 223.
 {¶ 35} Upon review, we find no error in accepting the only value given during the trial.
 {¶ 36} Assignment of Error V is denied.
 VI {¶ 37} Appellant claims the trial court erred in awarding attorney's fees to appellee. We disagree.
 {¶ 38} An award of attorney's fees lies within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356;Blakemore.
 {¶ 39} R.C. 3105.73 governs award of attorney's fees and litigation expenses. Subsection (A) states the following:
 {¶ 40} "(A) In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 41} Appellee is a victim of numerous strokes, has a small retirement plan, and receives $672.00 as her sole income from social security. T. at 11-12. Appellee's monthly cost for prescription medications without appellant's insurance will be *Page 10 
$1,332.22. T. at 201. So far, she has paid her attorney's fees with inheritance money she received from her father. T. at 284.
 {¶ 42} Upon review, we cannot find an abuse of discretion in ordering appellant to pay attorney's fees to appellee.
 {¶ 43} Assignment of Error VI is denied.
 {¶ 44} The judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division is hereby affirmed in part and reversed in part.
Farmer, P.J. and Delaney, J. concur, Edwards, J. concurs in part and dissents in part. *Page 11